[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10543

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANNAMALAI ANNAMALAI,
a.k.a. Dr. Commander Selvam,
a.k.a. Swamiji Sri Selvam Siddhar,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:13-cr-00437-TCB-CMS-1

_____

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In 2014, following a lengthy trial, a jury convicted Annamalai Annamalai of 34 criminal offenses, including conspiracy to commit bank fraud, bank fraud, filing a false federal income tax return, conspiracy to commit bankruptcy fraud, bankruptcy fraud, money laundering, making a false statement in writing, obstruction of justice, making false statements under oath during a bankruptcy proceeding, and conspiracy to harbor a fugitive. *See United States v. Annamalai*, 939 F.3d 1216, 1221–22 (11th Cir. 2019) (*Annamalai I*).   On appeal, we reversed his convictions for conspiracy to commit bankruptcy fraud, bankruptcy fraud, money laundering, and conspiracy to harbor a fugitive. *Id.* at 1225–35. We affirmed his remaining convictions and remanded for resentencing. *Id.* at 1221, 1238–39.

Following our decision and prior to resentencing, Annamalai filed a motion for attorney's fees under the Hyde Amendment for the counts that we reversed on direct appeal, along with a related motion for summary judgment and a motion to compel production of documents.   The district court denied these motions, and Annamalai appealed.   After review and with the benefit of oral argument, we affirm.

20-10543                Opinion of the Court                3

## I.    Background

### A.  Annamalai's Trial and Direct Appeal

Annamalai, "a self-proclaimed Hindu priest," ran the Hindu Temple and Community Center of Georgia, Inc. in Norcross, Georgia from 2005 to 2009. *United States v. Annamalai*, 939 F.3d 1216, 1221 (11th Cir. 2019). "The Hindu Temple generated income in part by charging fees for religious and spiritual products and services, including religious ceremonies and horoscopes." *Id.* "The evidence at trial showed that Mr. Annamalai used the Hindu Temple as part of a criminal scheme to defraud his followers and commit bank fraud." *Id.* Specifically, he made unauthorized transactions on his followers' credit cards, and then, if they complained, he would cite to the temple's "no refund" policy. *Id.* He also submitted false documents and information to banks and law enforcement to justify the charges. *Id.* He "used the fraud proceeds to fund a lavish lifestyle, including multiple homes and expensive cars." *Id.* The Hindu Temple filed for Chapter 11 bankruptcy in 2009 and the bankruptcy trustee closed the temple. *Id.* at 1221–22. Meanwhile, Annamalai incorporated a new temple, which also provided religious and spiritual products and services for a fee. *Id.* at 1222.

> In 2013, a grand jury in the Northern District of Georgia returned an indictment against Mr. Annamalai and others. The government subsequently obtained two superseding indictments. The second superseding indictment charged Mr.

Annamalai with 34 criminal offenses: conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344 (Count 1); bank fraud in violation of 18 U.S.C. §§ 1344 and 2 (Counts 2–8); filing a false federal income tax return in violation of 26 U.S.C. § 7206(1) (Count 9); conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. §§ 371 and 152(1) (Count 10); bankruptcy fraud in violation of 18 U.S.C. §§ 152(1) and 2 (Counts 11–20); money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Counts 21–30); making a false statement in writing in violation of 18 U.S.C. §§ 1001(a)(3) and 2 (Count 31); obstruction of justice in violation of 18 U.S.C. §§ 1503 and 2 (Count 32); making false statements under oath in a bankruptcy proceeding in violation of 18 U.S.C. §§ 152(2) and 2 (Count 33); and conspiracy to harbor a fugitive in violation of 18 U.S.C. §§ 1071 and 371 (Count 34).

*Id.* The monies received by the new temple served as the basis for the bankruptcy fraud charges. *Id.* A jury convicted Annamalai of all 34 counts. *Id.*

On appeal, we reversed Annamalai's convictions for substantive bankruptcy fraud (Counts 11–20), conspiracy to commit bankruptcy fraud (Count 10), money laundering (Counts 21–30), and conspiracy to harbor a fugitive (Count 34). *Id.* at 1228–35. As to sentencing, we determined that the district court erred in its loss-amount determination related to the bank fraud counts, which affected the guidelines' calculation and required

resentencing. *Id.* at 1235–38. We affirmed the other sentencing enhancements and remanded the case for further proceedings. *Id.* at 1238–39 & n.5.

### B. The Hyde Amendment Proceedings

Following our decision in *Annamalai I* and prior to resentencing, Annamalai filed a *pro se* motion for attorney's fees and expenses under the Hyde Amendment, seeking to recover fees and expenses incurred in defending against the counts of conviction that we reversed on direct appeal. He maintained that the government's prosecution on those counts was "frivolous, [v]exatious, or in bad faith" and "utterly without foundation in law or fact." That same day, he filed a *pro se* notice stating that he had served the government with a request for admissions under Federal Rule of Civil Procedure 36.

Approximately a month later, he filed a *pro se* motion for summary judgment on the Hyde Amendment claim. He asserted that the government had not answered his request for admissions, and, therefore, all were deemed admitted, and he was entitled to summary judgment on his Hyde Amendment motion.[1] Annamalai also filed a motion to compel production of certain documents, including any e-mails, excluding privileged materials,

---

[1] One of the requests for admissions was that all of the charges against Annamalai were "bogus, and brought with a vexatious and bad faith intent," and that the government had "orchestrated a massive malicious prosecution" against him.

that related to him, his wife, his former business partner, and any Hindu temples or business entities with which any of those individuals were involved—which he claimed was related to his Hyde Amendment motion.

The district court denied all three motions in an omnibus order, explaining that the Hyde Amendment

> allows attorney's fees if a prosecution is brought vexatiously, in bad faith, or so utterly without legal or factual foundation as to be frivolous.  This is not the case here.  A jury convicted Annamalai of [the reversed] counts and, although the Eleventh Circuit reversed the conviction[s], it is a far stretch from the type of prosecution for which the Hyde Amendment provides relief.

(internal citations omitted).  Annamalai, proceeding *pro se*, appealed.  Meanwhile, he awaited resentencing.  We appointed counsel to represent Annamalai and held oral argument.

During the pendency of this appeal, the district court held the resentencing hearing and resentenced Annamalai to 216 months' imprisonment, followed by five years' supervised release.

With this procedural background in mind, we turn to the arguments on appeal.[2]

---

[2] We issued a jurisdictional question, asking the parties to address whether the district court's omnibus order was a final order or otherwise immediately

20-10543                    Opinion of the Court                    7

## II.    Standard of Review

We review the district court's award or denial of attorney's fees and costs under the Hyde Amendment for abuse of discretion. *United States v. Adkinson*, 247 F.3d 1289, 1290 (11th Cir. 2001); *United States v. Gilbert*, 198 F.3d 1293, 1296–98 (11th Cir. 1999). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award or a denial upon findings of fact

---

appealable. We have appellate jurisdiction over only "final decisions of the district courts." 28 U.S.C. § 1291.

Annamalai argued that the district court's order was final and appealable under § 1291 because a Hyde Amendment motion constituted a separate, ancillary civil proceeding, and the order ended the litigation on the Hyde Amendment motion. The government, on the other hand, argued that we lacked jurisdiction to review the order because the Hyde Amendment motion is part of the underlying criminal action and, therefore, the order would be final only upon Annamalai's resentencing.

However, Annamalai's resentencing is now complete. Accordingly, we have jurisdiction under § 1291 to review the district court's denial of the Hyde Amendment motion. *See United States v. Curry*, 760 F.2d 1079, 1079–80 (11th Cir. 1985) (explaining that, in a criminal case, a "premature notice of appeal is effective to perfect an appeal as of the date the sentence is entered as the judgment"); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1356, 1359 (11th Cir. 2008) (explaining that "when [an] appeal is from a final judgment, the fact that the appeal substantively concerns an interlocutory ruling is no bar to jurisdiction"). Therefore, we need not decide whether the filing of a Hyde Amendment motion constitutes a separate civil proceeding or is part of the underlying criminal action.

that are clearly erroneous." *Gilbert*, 198 F.3d at 1298 (alterations adopted) (quotations omitted).

### III.    Discussion

Annamalai argues that the district court abused its discretion in denying his Hyde Amendment motion because it applied the wrong legal standard and because the government's unanswered request for admissions established that Annamalai was entitled to relief.

The Hyde Amendment provides in pertinent part:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.  Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).  The criminal defendant bears the burden of proving by a preponderance of the evidence that he is entitled to the fee award. *Adkinson*, 247 F.3d at 1291.  In order to be entitled to a Hyde Amendment award, the

defendant must do more than show that he "prevailed at the pre-trial, trial, or appellate stages of the prosecution." *Gilbert*, 198 F.3d at 1299. Rather, a defendant faces the "daunting obstacle" of "show[ing] that the government's position underlying the prosecution amounts to prosecutorial misconduct—a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous." *Id.* at 1299, 1302.

> For Hyde Amendment purposes,
>
> [v]exatious means without reasonable or probable cause or excuse. A frivolous action is one that is [g]roundless . . . with little prospect of success; often brought to embarrass or annoy the defendant. [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.

*United States v. Shaygan*, 652 F.3d 1297, 1312 (11th Cir. 2011) (second and third alterations in original) (internal citations and quotations omitted). "[T]he Supreme Court has explained that, in all but an exceptional case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 1315 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

The district court denied Annamalai's Hyde Amendment related motions, concluding that his prosecution was not brought vexatiously, in bad faith, or legally frivolous. The district court's decision was correct because Annamalai failed to demonstrate his entitlement to a fee award.

Although Annamalai argues that our opinion on direct appeal reversing the bankruptcy fraud convictions demonstrated that the government's position was legally frivolous as a matter of law, his argument is meritless. We reversed Annamalai's bankruptcy fraud convictions after determining that inclusion of the post-bankruptcy petition monies received by the new temple—the only basis for the bankruptcy fraud charges—would contravene the plain language of relevant bankruptcy statutes that defined the bankruptcy estate. *Annamalai I*, 939 F.3d at 1228–29. Accordingly, the bankruptcy fraud charges could not stand. *Id.* But our conclusion in *Annamalai I* does not demonstrate that the government's position was legally frivolous.

As we noted in *Annamalai I*, the bankruptcy trustee incorrectly opined that the receivables of the new temple were property of the bankruptcy estate. *Id.* at 1229. Additionally, the government believed that the Hindu temple and the new temple were essentially alter egos—*i.e.*, that they were the same business. *Id.* at 1230–31. Although we determined on direct appeal that those conclusions were incorrect and based on a misunderstanding of bankruptcy law, *id.*, an incorrect interpretation of the law or a misunderstanding of the law does not make a prosecution legally

frivolous. Thus, because the government legitimately believed, albeit erroneously, that the post-petition receivables of the new temple were part of the bankruptcy estate and that the Hindu temple and the new temple were alter egos, its prosecution was not vexatious, in bad faith, or legally frivolous. *Shaygan*, 652 F.3d at 1315, 1317. Accordingly, the district court had no discretion to award Annamalai fees or costs under the Hyde Amendment.

Annamalai argues that the district court applied an improper legal standard in denying his Hyde Amendment motion because the district court based its denial on the fact that he was convicted by a jury. He maintains that there is no limitation on Hyde Amendment relief for defendants that were convicted by a jury but later prevailed on appeal, and that it is entirely plausible that the government can convince a jury to convict in a legally frivolous case—as it did in his case. His argument is unpersuasive.

Although the district court mentioned in the order denying the Hyde Amendment motion that Annamalai had been convicted by a jury, the court did not improperly apply that fact in its determination of his entitlement to the fee award. Rather, the district court properly identified that the Hyde Amendment "allows attorney's fees if a prosecution is brought vexatiously, in bad faith, or so utterly without legal or factual foundation as to be frivolous"—which is the correct legal standard. And it applied that legal standard when it determined that Annamalai's case was "a far stretch from the type of prosecution for which the Hyde

Amendment provides relief." Accordingly, the district court did not apply an improper legal standard.

Alternatively, Annamalai argues that the district court erred in denying his Hyde Amendment motion and his related motion for summary judgment and motion to compel because it ignored the fact that the government failed to respond to his Rule 36 request for admissions and therefore those admissions—which included three statements that the government's prosecution was malicious, in bad faith, vexatious, and frivolous—were admitted. Accordingly, he claims that he made the required showing for a fee award. Annamalai's argument is meritless. Even assuming that Rule 36 applies to his case—a question on which we express no opinion because we do not reach whether a Hyde Amendment motion is a separate civil proceeding or part of the underlying criminal action—a party cannot use Rule 36 to request admissions to legal conclusions. *See* Fed. R. Civ. P. 36(a)(1) (authorizing a party to request admissions to "facts, the application of law to fact, or opinions about either"); *see also Pickens v. Equitable Life Assurance Soc'y of the U.S.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (holding that "requests for admissions as to central facts in dispute are beyond the proper scope of [Rule 36]"). And, regardless, even if the government were deemed to have made the alleged admissions, we are not bound to accept the government's concessions. *United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021); *see also United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021) (explaining that courts are never bound by

concessions on questions of law).  Rather, the determination of whether a government's prosecution was vexatious, frivolous, malicious or in bad faith is reserved for the court.

Accordingly, we affirm the district court's order.

**AFFIRMED.**